ALLEN HAMMERMAN *et al.*, Plaintiffs-Appellants, v. THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY *et al.*, Defendants-Appellees (Acme Barrel Company, Intervenor-Appellant).

First District (5th Division) No. 85—0987

Opinion filed September 26, 1986.

Lewis W. Schlifkin and Edward A. Berman, both of Berman, Roberts & Kelly, and Barry Greenburg, of Fisch, Lansky & Greenburg, both of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, Malcolm E. Erickson and Tanya K. Dietrich, Special Assistant Attorneys General, and Richard Ryan, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from the dismissal of complaints for declaratory judgment, injunctive relief and damages in an action involving alleged misconduct in the administration of the Illinois tollway system.

Plaintiff, Allen Hammerman (Hammerman) filed a four-count class action complaint on behalf of himself and all other holders of revenue bonds (bondholders) issued pursuant to the Illinois State Toll Highway Authority Bond Resolution of 1955 (resolution) against defendants, the Illinois State Toll Highway Authority (Authority) and its directors, claiming that they breached the contract created by the resolution, violated the statutory duties imposed upon them by the Illinois State Toll Highway Authority Act (Authority Act) (Ill. Rev. Stat. 1981, ch. 121, par. 100—1 *et seq.*), and denied the bondholders due process and equal protection. The complaint alleged, essentially, that the Motor Fuel Tax Law (Ill. Rev. Stat. 1983, ch. 120, par. 417 *et seq.*), (a) requires operators of motor vehicles to pay a tax on fuel for the privilege of operating their vehicles on the public highways of Illinois (Ill. Rev. Stat. 1983, ch. 120, par. 418), and (b) directs that revenues derived therefrom be placed in the Motor Fuel Tax Fund and used in accordance with the Illinois Highway Code (Ill. Rev. Stat. 1983, ch. 121, par. 1—101 *et seq.*), for the repair and maintenance of those highways; that although tollways are highways qualifying for receipt of tax revenues from the fund, defendants have failed to obtain or attempt to obtain any of those monies but, instead, have relied exclusively on toll revenues to pay tollway repair and maintenance costs; that their actions constitute an illegal expenditure of sums properly belonging in the "sinking fund"— reserve fund—which is to be applied solely to the retirement of bonds, and has resulted in the otherwise unnecessary increase of toll rates.

Thereafter, following the granting of its petition to intervene, Acme Barrel Company (Acme) filed an amended intervening class action complaint on behalf of all motorists who use the Illinois tollways (users). Acme's complaint adopted that of Hammerman's to the extent the two were not inconsistent, and further alleged, in summary, that because, in addition to tolls, users must pay motor fuel taxes on the fuel consumed by their vehicles on the tollways, they are unconstitutionally charged twice for the privilege of using the public highways of Illinois, and that due to defendants' refusal to obtain for tollway purposes that portion of available motor fuel tax revenues paid by them—to which tollways, as public highways, are entitled—the toll-rate structure is and has been "illegally and invalidly excessive." Acme sought a declaration that defendants' conduct is violative of the constitutional prohibition against special legislation (Ill. Const. 1970, art. IV, sec. 13), and denies them due process and equal protection, and that the toll rate is illegally excessive; an accounting and refund of all excess tolls collected by defendants during the previous 10

years; and an injunction directing them to "do all things necessary to acquire motor fuel taxes for the future repair and maintenance of the tollways."

Defendants filed a motion to dismiss both complaints which, after argument by counsel,[1] was granted by the trial court in an order finding that (a) the legislature intended the tollway system to be a "self-sustaining operation" which uses revenues derived form tolls for its repair and maintenance; (b) there is no statutory authority requiring defendants to obtain motor fuel taxes for repair and maintenance costs; and (c) determinations regarding toll rates are within the discretion of the Authority. This appeal followed.

OPINION

In the interim between the filing of this appeal and oral argument on it, defendants filed a motion to dismiss Hammerman's portion of the appeal on the ground that his claims as a bondholder have been rendered moot by an agreed settlement order entered in the circuit court on November 20, 1985, in the case of Clarage v. Illinois State Toll Highway Authority (No. 84 CH 6781) (hereinafter Clarage), a class action suit brought on behalf of all bondholders in which it was alleged that the Authority had violated the terms of the resolution by failing to properly allocate certain funds to various accounts in the manner prescribed therein. It appears from the documents filed by defendants in support of dismissal that the class in Clarage was certified on December 28, 1984,[2] to "include all holders of bonds issued by the Authority or its predecessor, the Illinois State Toll Highway Commission," and the notice given thereafter stated that members of the class "will be bound by a judgment in this action and have no right to be excluded from [it]," but that they could enter an appearance on or before February 15, 1985. On November 4, 1985, the trial court approved (a) a proposed stipulation of settlement entered into by the parties on November 2, 1985, subject to the rights of the class members to file objections thereto by November 18, 1985, and (b) the form of notice of the proposed settlement submitted therewith, which called for a mailing to all registered bondholders and publication in the Daily Bond Buyer once each week for two successive weeks. No objections having been filed, on November 20, 1985, the Clarage court entered a

---

[1]The parties proceeded to argument on the motion to dismiss without argument on or a determination by the court as to certification of either class.

[2]The order dismissing the instant action was entered the previous day—December 27, 1984—and the motion to vacate it was denied on March 11, 1985.

final judgment order approving the agreed settlement and dismissing plaintiffs' complaints with prejudice "in full and final discharge of any and all claims and causes of action against defendants with respect to all transactions, matters, causes or things asserted or which could have been asserted in the above-captioned matter." Pursuant to the terms of the settlement, defendants subsequently carried out an advance refunding bond sale, as permitted by section 20.1 of the Authority Act (Ill. Rev. Stat. 1983, ch. 121, par. 100—20.1), and deposited the proceeds therefrom into an irrevocable trust account held by Continental Bank & Trust Company, as trustee, to retire all then-outstanding bonds. Some of those proceeds were used to conduct an extraordinary redemption, on January 21, 1976, of a portion of the bonds chosen by random drawing, and the balance was retained in trust for the refunding of the remaining bonds according to a specified schedule.

In response to defendants' motion to dismiss his appeal, Hammerman argues that the final order in Clarage discharging all bondholder claims against the Authority is not binding upon him because he was not given (a) adequate notice of either the class action or the proposed settlement or (b) the right to opt out of the class.

We note, however, and Hammerman concedes, that the orders entered by the Clarage court, determining that persons coming within the definition of the class had no right to be excluded from the action, and that adequate notice had been given both of the action and the proposed settlement, have not been challenged by either a motion to vacate in the trial court or an appeal; thus the question of their propriety is not properly before us and will not be considered.

In any event, section 20.1, as amended prior to the settlement in Clarage, provides:

"(a) The Authority is hereby authorized, by resolution, to provide for the issuance, *** of refunding or advance refunding bonds for the purpose of refunding any bonds then outstanding at maturity or on any redemption date *** which shall have been issued by the Authority or its predecessor, the Illinois State Toll Highway Commission.

(b) The proceeds of any such refunding bonds may be used for any one or more of the following purposes:
* * *

(5) To make deposits into an irrevocable trust in accordance with subsection (f) of this Section 20.1 *** [which provides:]
* * *

(f) Upon *** the deposit of the proceeds of the refunding

bonds in an irrevocable trust pursuant to a trust agreement with a trustee requiring the trustee to satisfy the obligations of the Authority to timely pay at maturity or upon prior redemption the outstanding bonds for which the proceeds of the refunding bonds \*\*\* are deposited, in an amount sufficient to satisfy the obligations of the Authority to timely pay at maturity or upon prior redemption such outstanding bonds, \*\*\* such outstanding bonds shall be deemed paid and no longer be deemed to be outstanding for purposes of such resolution \*\*\* and all rights and obligations under any such prior resolution \*\*\* shall be deemed discharged \*\*\* provided, however, that the holders of such outstanding bonds shall have an irrevocable and unconditional right to payment in full of all principal of and premium, if any, and interest on such outstanding bonds, at maturity or upon prior redemption, from the amounts on deposit in such trust. \*\*\*

(g) It is hereby found and determined that the contractual rights of the bondholders under any such prior resolution \*\*\* will not be impaired by a refunding pursuant to the provisions of this Section 20.1 in that, the payment of such outstanding bonds having been provided for as set forth herein, the bondholders' rights and security as to payment of the principal of, premium, if any, and interest on such outstanding bonds will have been enhanced, and the bondholders shall suffer no financial loss." Ill. Rev. Stat. 1985, ch. 121, par. 100—20.1 (as amended by Pub. Act 83—1258, eff. Aug. 15, 1984).

It is clear therefrom that defendants had the authority, separate and distinct from the order approving the agreed settlement in Clarage, to advance refund any or all then-outstanding bonds and that once they exercised that power by issuing the 1985 series of refunding revenue bonds and depositing into an irrevocable trust an amount of the proceeds therefrom sufficient to make full and timely payment on the bonds, all other contractual obligations owed to and all other contractual rights possessed by Hammerman under the resolution—apart from the unconditional right to payment in full of all amounts due on the bonds from the fund held in trust—were discharged, which, as defendants correctly assert, renders moot all claims made by him as a bondholder. (See *Morton Arboretum v. Thompson* (N.D. Ill. 1984), 605 F. Supp. 486 (an action by a bondholder challenging the 1984 amendment of the Authority Act to provide through section 20.1, as set forth in relevant part above, for the refunding of outstanding revenue bonds on the ground that it impaired the terms of

the resolution covering the original issuance of bonds, in which the court held, *inter alia*, that where the right of payment—which is the fundamental substantive right conferred by the resolution—has been assured, there is no impairment of contract and dismissal of the action is both justified and appropriate).) Accordingly, that portion of this appeal brought by Hammerman from the order of the trial court dismissing his complaint is hereby dismissed as moot. See *People ex rel. Black v. Dukes* (1983), 96 Ill. 2d 273, 449 N.E.2d 856; *La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 121 N.E.2d 486.

We turn then to Acme's appeal from the dismissal of its complaint on behalf of tollway users, which, as stated earlier, adopted the Hammerman complaint and further sought (a) a declaration that tollway users are compelled, in violation of their constitutional rights, to pay twice—through tolls and motor fuel taxes—for the privilege of using public highways in Illinois, and that due to defendants' refusal to obtain that portion of motor fuel tax revenues to which the tollways are entitled, the toll rates are illegally excessive, (b) an accounting and refund of all excess tolls collected by defendants during the previous 10 years, and (c) an injunction directing them to "do all things necessary to acquire available motor fuel tax monies for the future repair and maintenance of the tollways."

Initially, we note that section 31 of the Authority Act (Ill. Rev. Stat. 1983, ch. 121, par. 100—31), states:

"The State of Illinois hereby consents to suits against the Authority solely as in this section provided:

(a) The holder or holders of any bonds *** issued by the Authority may bring civil actions to compel the observance by the Authority or by any of its officers *** of any contract or covenant made by the Authority with the holders of such bonds *** and to compel the Authority and any of its officers *** to perform any duties required to be performed for the benefit of the holders of said bonds *** by the provisions of the resolution authorizing their issuance, or by this Act, or to enjoin the Authority and any of its officers *** from taking any action in conflict with such contract or covenant.

(b) any person or persons may bring a civil action to recover damages for injury to his person or property caused by any act of the Authority or *** its officers *** done under its direction."

Notwithstanding our determination that the substantive question of the adequacy of Hammerman's complaint is now moot, a review

thereof reveals that he specifically relied on the language of section 31(a) which, prior to the 1984 amendment of the Authority Act, was contained in section 17 (Ill. Rev. Stat. 1981, ch. 121, par. 100–17), as statutory authority for bringing an action based on an alleged breach of the contractual and statutory duties owed by defendants to bondholders by virtue of the resolution and by the Authority Act itself.

With respect to Acme's adoption of the Hammerman complaint, we note that not only is Acme not a bondholder, which alone renders the allegations made by Hammerman wholly inapplicable to it, but, indeed, there exists no contractual relationship whatsoever between it— or any other users—and the Authority which would serve to sustain a cause of action under the provisions of section 31(a); and since Acme's complaint does not come within the purview of paragraph (b), wherein the State has consented to suits involving personal or property injury allegedly caused by the Authority, it would appear, from the introductory language limiting actions against the Authority to the two types expressly authorized therein, that section 31 was intended by the General Assembly to be an exception provided for in Article XIII, section 4, of the 1970 Illinois Constitution to the general abolition of sovereign immunity in this State. Ill. Const. 1970, art. XIII, sec. 4.

Case law suggests, however, that the legislature's express allowance of only the two types of suits described in section 31 and its correlative silence as to all others cannot be interpreted as an invocation—by silence—of sovereign immunity as to those excepted. (*Miller-Davis Co. v. Illinois State Toll Highway Authority* (7th Cir. 1977), 567 F.2d 323.) The court of appeals in *Miller* relied on the reasoning in *People v. Illinois Toll Highway Com.* (1954), 3 Ill. 2d 218, 120 N.E.2d 35, an action challenging, *inter alia*, the constitutionality of those sections of the Illinois State Toll Commission Act (Ill. Rev. Stat. 1953, ch. 121, par. 314a26 *et seq.*), which are now embodied in section 31 of the Authority Act. The supreme court held that because the financial structure of the Commission was largely independent of State government and the funds from which a judgment against it would be satisfied are derived from bond and toll revenues rather than from the general revenues of the State treasury, the sections permitting bondholder and tort liability actions were valid, and further stated, "[t]he extent to which the Commission would or would not be immune to actual liability in any particular actions is *** not now before us. Our decision is simply that the constitution does not forbid it to be made a party defendant" (3 Ill. 2d 218, 227, 120 N.E.2d 35, 41).

■ Thus, we cannot say, as defendants urge, that because Acme's

suit is not expressly authorized by section 31, it is barred by sovereign immunity; however, we nevertheless believe, for other reasons, that the action was properly dismissed.

First, the complaint, as we understand it, alleges that, as a result of defendants' refusal to obtain motor fuel tax revenues, tollway users—unlike users of highways on which no tolls are charged—are compelled to pay twice for the privilege of using and the support of public highways, which constitutes a violation of the constitutional prohibition against "special legislation" (Ill. Const. 1970, art. IV, sec. 13), and a denial of due process and equal protection.

Assuming that the "special legislation" referred to by Acme is the Authority Act, we note that in upholding the constitutionality of its predecessors, the Illinois State Toll Highway Commission Act (Ill. Rev. Stat. 1953, ch. 121, par. 314a26 *et seq.*), mentioned earlier, and the Illinois Superhighway Act (Ill. Rev. Stat. 1943, ch. 112, par. 314a *et seq.*), the supreme court specifically stated, in *People v. Illinois Toll Highway Com.* (1954), 3 Ill. 2d 218, 120 N.E.2d 35, and *People v. Schommer* (1945), 392 Ill. 17, 63 N.E. 744, that they did not constitute special legislation. The Authority Act itself was held to be constitutional in *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Com.* (1969), 42 Ill. 2d 385, 251 N.E.2d 253), and expressly authorizes the Authority to charge tolls for the privilege of using the tollways which will provide sufficient funds to pay the cost of repairing, regulating and operating them. (Ill. Rev. Stat. 1967, ch. 121, par. 100—19 (amended by Pub. Act 83—1258, eff. Aug. 15, 1984)). Having been given the power—indeed, the responsibility—to levy and collect tolls for the construction, operation and maintenance of the tollway system, we see no basis for Acme's claim that defendants' exercise thereof violates their constitutional rights, particularly since tollway usage—and the attendant payment of tolls as compensation therefor—is a matter of personal choice.

If, on the other hand, it is the Motor Fuel Tax Law and the manner of collection and/or distribution of the revenues generated thereby which serves as the basis for Acme's constitutional objections, it is obvious that the complaint fails to state a cause of action against these defendants, who have nothing to do with the imposition of that tax and, in fact, are not even involved in the actual collection or remittance of that portion of it paid on fuel sold at gasoline distributorships located on the tollways.

Further, as to the relief sought in Acme's complaint, we note that the Authority Act not only empowers the Authority, in section 19, to fix and collect tolls but additionally provides, in section 32 (Ill. Rev.

Stat. 1983, ch. 121, par. 100—32), that:

> "All determinations made by the Authority in the exercise of its discretionary powers, with the approval of the Governor if such approval is expressly required by the provisions of this Act, including without limitation *** the tolls to be charged for the use [of the tollways] shall be conclusive and shall not be subject to review by the courts or by any administrative agency of the State."

Therefore, while the Authority may not be immune from suit generally, it is our opinion that, in the light of the clear language of section 32, actions such as this one challenging the amount of the tolls charged and seeking a refund thereof are impermissible absent the presence of bad faith, fraud, corruption, manifest oppression or a clear abuse of discretion (*People v. Illinois Toll Highway Com.* (1954), 3 Ill. 2d 218, 120 N.E.2d 35), none of which have been shown in this case.

Although the parties' briefs contain numerous other arguments, including exhaustive discussions regarding the question whether tollways are public highways for the purpose of entitlement to motor fuel tax revenues, in view of our findings that Hammerman's claims have been rendered moot and that there is no constitutional or statutory basis on which the Acme complaint can be sustained, we need not consider the remaining issues raised.

For the reasons stated, that portion of the appeal brought by Hammerman is dismissed, and that portion of the appeal brought by Acme from the dismissal of its complaint is affirmed.

Dismissed in part; affirmed in part.

PINCHAM and MURRAY, JJ., concur.