ALFONS W. BOBROWICZ, Indiv. and on behalf of all residents of unincorporated areas of the Metropolitan Sanitary District of Greater Chicago similarly situated, Plaintiffs-Appellees and Cross-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellant and Cross-Appellee.

First District (3rd Division)   No. 86—3163

Opinion filed March 16, 1988.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth Moskovitch, Dodge Wells, and Robin Schulberg, Assistant Corporation Counsel, of counsel), for appellant.

Kevin M. Forde, of Chicago, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Defendant, the City of Chicago, appeals from an order of the trial court granting summary judgment in favor of plaintiff Alfons Bobrowicz and all members of the class represented by plaintiff, in their action challenging the surcharge imposed by defendant on the sale of water to private entities and individuals residing in unincorporated areas of the Metropolitan Sanitary District. In a cross-appeal, plaintiffs appeal from the granting of summary judgment in favor of defendant on an equal protection claim and the dismissal of the last count of their complaint charging that the practices of defendant violate the Illinois Antitrust Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—1 et seq.).

Defendant owns and operates a waterworks system known as the Metropolitan Sanitary District of Greater Chicago (MSD). The MSD was created by the Chicago Sanitary District Act of 1889 (Ill. Rev. Stat. 1889, ch. 42, par. 320 et seq.), and since that time has been the main waterworks system for the greater metropolitan area of Chicago. The MSD procures its supply of water from Lake Michigan and protects the lake from sewage pollution with its sewage facilities. Defendant sells water to approximately 45 suburban municipalities within the MSD. Defendant also sells water to four railroads, a private utility company and approximately 300 private customers. The municipalities which purchase water from defendant supply water to their own residents, and often sell water to other municipalities or individual consumers outside their corporate limits.

Section 26 of the Sanitary District Act imposes a price restriction on sales of water to cities, villages, townships, incorporated towns or other municipal corporations. (Ill. Rev. Stat. 1985, ch. 42, par. 348.) Before defendant will sell water to a municipality, the purchaser is required to sign a water service contract which, until 1985, required the municipality to report the amount of water it delivered to consumers in unincorporated areas and to pay defendant a 50% surcharge above the city meter rate for such water. Defendant also required that the purchasing municipality impose these same conditions on any other municipality to which it sold water. Defendant eliminated the surcharge provision from contracts with municipal customers entered into or renewed after June 1982. Defendant also unilaterally cancelled the surcharge provision in all existing contracts as of May 1, 1985.

The representative plaintiff resides in an unincorporated area of Worth Township, in Cook County. This property is located within the boundaries of the MSD. Plaintiff purchases water from the City of Palos Heights, which receives its water from Alsip. Alsip purchases its water from defendant. During the period of time relevant to this suit,

plaintiff paid the 50% surcharge to Palos Heights and that surcharge was eventually remitted to defendant.

Plaintiff filed this action in 1984 alleging that defendant's imposition of a 50% surcharge violated section 26 of the Sanitary District Act, and the common law duty of a utility to charge reasonable rates. Count II of the complaint alleged that defendant's 50% surcharge on water furnished for consumption by the plaintiff class violated their constitutional rights to equal protection of the law. Count III alleged that the surcharge constituted illegal monopolization and price discrimination and thus violated the Illinois Antitrust Act. Ill. Rev. Stat. 1985, ch. 38, par. 60—1 *et seq.*

The trial court certified a plaintiff class consisting of all water consumers located outside Chicago, but within the MSD, who consumed water supplied either directly or indirectly by Chicago for which Chicago was paid a surcharge. As a result of this class definition, those represented include all private entities or individuals who purchase water from defendant, and all individuals who purchase water from a suburban municipality which either purchases from defendant or from another municipality which purchases from defendant, who pay a surcharge.

The trial court granted plaintiffs' motion for summary judgment on count I of their complaint. The court granted summary judgment for defendant on count II and granted defendant's motion to dismiss with prejudice count III. In its holding on count I, the trial court held that section 26 of the Sanitary District Act required defendant to furnish water to consumers within unincorporated areas of the MSD and private entities at a rate no greater than the rate defendant charges its own residents.

Pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308), the trial court certified two questions for immediate appeal: (1) Does section 26 of the Sanitary District Act, or the common law, prohibit the City of Chicago from imposing a surcharge on water furnished within the MSD to a person or entity which is not a "city, village, township, incorporated town or other municipal corporation?" and (2) Did or does section 26 of the Act, or the common law, prohibit the City of Chicago from imposing a surcharge on water furnished within the MSD to a "city, village, township, incorporated town or other municipal corporation" for consumption by nonresidents of the purchasing entity?

Section 26 in relevant part states:

"Any city, village or incorporated town located in any such sanitary district which owns a system of waterworks and procures its supply of water from a lake or other source which will

be saved from sewage pollution by the construction of the sewage facilities provided by this Act shall furnish water to any city, village, township, incorporated town or other municipal corporation within [or outside] the boundaries of any such sanitary district in such quantities as may be required to supply consumers within [or outside] said territory at no greater price or charge than said city, village or incorporated town charges and collects of consumers within its limits through meters for like large quantities ***." (Ill. Rev. Stat. 1985, ch. 42, par. 348.)

The two phrases set off by brackets were added by amendment in 1983.

Plaintiffs argue that this language of the statute requires defendant to furnish water at its corporate limits for consumption throughout the MSD and prohibits the surcharge imposed on private entities and residents of unincorporated areas within the MSD. Defendant, however, argues that the language of the statute unambiguously states that the price regulation applies only to the sale of water to public municipalities.

Plaintiffs agree that the statute as originally enacted regulated the price only on sales to municipal corporations. They argue, however, that when the statute was originally enacted in 1889, the legislature did not anticipate that municipalities within the MSD would extend water service to nonresident consumers or that Chicago would furnish water to private entities or individual consumers. At the time the MSD was created, only municipalities had facilities for water distribution, and many of these municipalities were not yet able to extend water service to all of their residents. Based on these historical facts, plaintiffs argue that even though the legislature had not amended the statute to provide for the sale to residents of unincorporated areas or private entities, it did not intend to preclude such consumers from the section 26 price restriction by the original wording of the statute.

We cannot agree with the arguments posed by plaintiffs regarding the intention of the legislature with regard to this statute. The language of section 26 is unambiguous and clearly states that the water must be furnished to a city, village, township, incorporated town or other municipal corporation to come within the statute. Legislative intent is to be derived primarily from a consideration of the legislative language itself. " 'There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports.' " *People ex rel. Scott v.*

*Schwulst Building Center, Inc.* (1982), 89 Ill. 2d 365, 371, 432 N.E.2d 855, quoting *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350, 167 N.E.2d 169.

Section 26 has been redrafted several times since the original enactment, yet each draft has limited the scope to sales to municipal corporations, even after private corporations had contracted with defendant for the purchase of water. Evidence shows that defendant began furnishing water to the Chicago Rock Island and Pacific Railroad Company in 1922. The fact that the legislature never extended the wording of the statute to include private entities such as the railway makes it evident that the statute does not protect such entities from the surcharge.

We therefore find that section 26 does not prohibit defendant from imposing a surcharge on water furnished within the MSD to a person or entity which is not a "city, village, township, incorporated town or other municipal corporation."

The next contention between the parties is whether or not the price restriction imposed by section 26 applies when the consumers of the water are nonresidents of the purchasing municipality, such as plaintiff Bobrowicz, who resides in an unincorporated area within the MSD. Both parties focus on the trial court's interpretation of the phrase "within said territory" in section 26. The statute states: "Any city *** located in any such sanitary district *** shall furnish water to any city, village, township, incorporated town or other municipal corporation within [or outside] the boundaries of any such sanitary district in such quantities as may be required to supply consumers within [or outside] *said territory*" at the meter rate. (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 42, par. 348.) The two phrases set off by brackets were added by amendment in 1983. Plaintiffs maintain that the phrase "said territory" underlined in the statute set out above refers to the MSD, and thus plaintiffs, as residents of the MSD, are included in the rate restriction imposed by section 26. Defendant counters that "said territory" refers to the purchasing municipality and thus plaintiffs are not included in the scope of section 26. The trial court held that "said territory" refers to the MSD and thus defendant is required to furnish water to consumers within unincorporated areas of the MSD and private entities at a rate no greater than the rate defendant charges its own residents.

■ Plaintiffs concede that as originally enacted, use of the word "territory" in the 1889 version of section 26 referred to land which was part of the "purchasing" entity rather than part of the MSD generally. Nothing in the subsequent history of amendments of the stat-

ute convinces us that the phrase has a changed meaning and now refers to the MSD. Furthermore, an interpretation of "said territory" as referring to the purchasing municipality is consistent with a logical reading of the statute. The purpose of the provision was to authorize, and later require, the sale of water from one municipality to another with the original requirement that both municipalities be within the same sanitary district. It is illogical that the statute would authorize or require one municipality to sell water to another in an amount sufficient to supply consumers within any portion of the sanitary district. This, in our estimation, would be an indirect and misleading attempt to include residents of unincorporated areas of the MSD within the reach of the statute.

In addition, our supreme court has interpreted "within said territory" to mean the purchasing municipality. In *Baltis v. Village of Westchester* (1954), 3 Ill. 2d 388, 121 N.E.2d 495, the court considered whether Westchester, which received its water from Chicago, was required to furnish water to bordering La Grange Park. We recognize that *Baltis* presented no issue as to whether that water would be consumed within or outside the boundaries of the municipality. However, the court did have occasion to interpret the relevant portion of section 26. In deciding that Westchester was authorized to sell water to La Grange Park, the court paraphrased section 26: "Under such circumstances, the village of Westchester is authorized by the statute to furnish water to any other municipality within the boundaries of the sanitary district in such quantity as may be required to supply consumers within such other municipality at the rates prescribed by the statute." (3 Ill. 2d at 400.) This passage from the *Baltis* opinion demonstrates that a logical interpretation of the phrase "within said territory" is as a reference to the purchasing municipality.

Plaintiffs maintain that under defendant's construction of the statute, residents of unincorporated areas would not only have no right to water at the meter rate, but they would have no right to water at any price. We disagree. Section 26 only imposes a price restriction on sales to municipal corporations. Nothing in section 26 prohibits extraterritorial sales either directly by defendant or by an intermediary municipality. That defendant has private contracts with 300 individual consumers, and that plaintiffs who reside in unincorporated areas have water available from neighboring municipalities, demonstrates that water is widely available to plaintiffs.

While section 26 did not govern the rates charged by defendant to plaintiffs herein, we hold that defendant does have a common law duty to charge reasonable rates. When a municipal cor-

poration owns and operates a water system for the purpose of selling water to consumers, it is acting in a business capacity and is generally to be treated as if it were a private utility company. (*Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 405 N.E.2d 1256; *Baltis v. Village of Westchester* (1954), 3 Ill. 2d 388, 121 N.E.2d 495.) At common law, such an enterprise, because it had a monopoly on the service provided in the area, was prohibited from charging exorbitant rates and was required to serve all of its consumers without unreasonable discrimination in rates or manner of service. This common law duty still operates to prevent public utilities from acting in an unreasonable or discriminatory manner. *Austin View*, 85 Ill. App. 3d 89, 405 N.E.2d 1256.

The test to determine whether the rates charged by a privately owned municipality are discriminatory is based on a consideration of such factors as differences in the amount of the product used, the time when used, the purpose for which used, or any other relevant factors reflecting a difference in costs. Rates that are reasonably related to differences in the costs of providing service are not unreasonably discriminatory. *Austin View*, 85 Ill. App. 3d 89, 405 N.E.2d 1256.

Defendant maintains that it has no common law duty to charge reasonable rates because it has no contractual obligation with plaintiffs. We note that several members of the plaintiff class did have contracts for the purchase of water with defendant, and thus defendant's common law duty to charge reasonable rates unquestionably applies to those plaintiffs. With regard to the remaining plaintiffs who did not contract directly with defendant for the purchase of water, we believe that a contract was not necessary to bind defendant to charge reasonable rates. Once defendant has undertaken to serve nonresidents of purchasing municipalities, it is bound to charge reasonable, nondiscriminatory rates. Our supreme court has held that when it comes to the extent of protection under their common law right, consumers of municipally owned utilities are just as completely protected from exorbitant rates and unjust discrimination as the consumers are under the Public Utilities Act (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 1—101 *et seq.*). (*Austin View*, 85 Ill. App. 3d 89, 405 N.E.2d 1256, citing *Springfield Gas & Electric Co. v. City of Springfield* (1920), 292 Ill. 236, 126 N.E. 739.) We acknowledge that plaintiffs are indirect customers of defendant and purchase their water from municipalities which purchase from defendant or purchase from another municipality which purchases from defendant. Nonetheless, it is significant that defendant referred to plaintiffs residing in unincorporated areas in the contracts between defendant and suburban municipalities, and

more importantly, defendant required the purchasing municipalities to pay a surcharge for all sales to any such plaintiffs.

Defendant maintains that no duty exists with plaintiffs however, because the contracts with purchasing municipalities do not require those municipalities to impose the surcharge on any nonresident consumers to whom they sell water. While the contracts themselves do not impose the surcharge on such sales, defendant requires via its contracts with the purchasing municipalities that they pay defendant a 50% surcharge on any sales to nonresident consumers. The distinction between requiring the purchasing municipalities to impose the surcharge on nonresidents and requiring the municipality to pay defendant a surcharge for such sales is minimal in terms of the discriminatory effect.

The cases cited by defendant, *Adkisson v. Ozment* (1977), 55 Ill. App. 3d 108, 370 N.E.2d 594, *Exchange National Bank v. Behrel* (1972), 9 Ill. App. 3d 338, 292 N.E.2d 164, *Rehm v. City of Batavia* (1955), 5 Ill. App. 2d 442, 125 N.E.2d 831, to argue that it has no duty to plaintiffs do not stand for the proposition that a municipal utility which undertakes to serve a nonresident can charge unreasonable and discriminatory prices. The cases merely state that a municipal utility is under no duty to provide service to nonresidents. As stated above however, once the utility has undertaken to provide water to nonresidents, even indirectly through a contract, the municipal utility is under a duty not to charge discriminatory rates.

Citing *Austin View*, defendant further argues that the reasonableness of the rates it charges municipalities for water intended for consumption by nonresidents of the municipality is a question of fact that cannot be resolved by summary judgment. *Austin View* noted that when a privately owned utility company is charged with unreasonable discrimination in rates in violation of the Public Utilities Act, the question of whether the difference in the rates is reasonably related to a difference in costs of providing the service is always one of fact to be based solely on the evidence presented. See *Produce Terminal Corp. v. Illinois Commerce Comm'n* (1953), 414 Ill. 582, 112 N.E.2d 141; *Village of Niles v. City of Chicago* (1980), 82 Ill. App. 3d 60, 401 N.E.2d 1235.

■ Even recognizing this rule, we hold, as a matter of law, that in the present case, there is no disputed issue of fact regarding the cost of the water. It is undisputed that defendant delivers its water for extraterritorial consumption at the city boundaries. Every purchasing municipality must provide for the water to be connected at the city boundary and is responsible for delivery of the water beyond

that point. Defendant does not operate any water distribution facilities outside of its corporate limits. We therefore agree with plaintiffs that it is impossible that defendant could incur greater costs in delivering water at its boundaries for consumption by nonresidents of a municipality as opposed to residents of a municipality.

Defendant cites *Village of Niles* in support of its argument that this issue cannot be decided on a motion for summary judgment. Defendant claims that *Niles* could have been decided on summary judgment if the termination points of Chicago's water mains were the sole determinant of costs. In *Village of Niles*, 47 suburban municipalities within the MSD alleged that Chicago's metered water rates were unreasonable and discriminatory. This court held that plaintiffs were entitled to an evidentiary hearing for several reasons. The complaint alleged discriminatory practices against the suburbs, including the rates charged for serving the suburbs, and the disparity of services and benefits received for the rates charged. Furthermore, plaintiffs in *Niles* challenged the reasonableness of the city meter rate which was used as the base for determining the rates charged to suburbs. In contrast, the present case does not challenge the reasonableness of the city meter rate, but only challenges the differential between the rate charged suburban municipalities for sales to their residents and the rate charged if the water is to be consumed outside a municipal corporation.

The result of the surcharge is to impose upon residents of unincorporated areas a 50% higher rate than that charged residents of Chicago, or residents of municipalities to whom Chicago sells water. This, in our estimation, is an arbitrary imposition of a surcharge on the plaintiff class and clearly in violation of defendant's common law duty not to charge unreasonable or discriminatory rates. We therefore affirm the trial court's granting of summary judgment in count I of plaintiffs' complaint.

Because we find that defendant has violated its common law duty to charge reasonable and nondiscriminatory rates, we find that we need not address plaintiff's claim regarding violation of their rights to equal protection.

Count III of plaintiffs' complaint alleged that the surcharge constituted illegal monopolization and price discrimination and thus violated the Illinois Antitrust Act. Ill. Rev. Stat. 1985, ch. 38, par. 60—1 *et seq.*

The Illinois Antitrust Act clearly allows an indirect purchaser such as the representative plaintiff and others similarly situated the right to damages. However, the Act states "that no person other than

the Attorney General of this State shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act." (Ill. Rev. Stat. 1985, ch. 38, par. 60—7.) The present case was filed in the form of a class action suit against defendant. The statute clearly mandates that such an action be brought by the Attorney General, and therefore we affirm the trial court's dismissal of count III.

Because we are dismissing count III of plaintiffs' complaint, we need not reach the question of whether Federal law has preempted the statute allowing indirect purchasers to sue under the antitrust law, or the question of whether the 1986 amendments to the Illinois antitrust statute should be applied retroactively.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in all respects.

Judgment affirmed.

RIZZI and FREEMAN, JJ., concur.