ROY L. ENDSLEY III, *et al.*, Indiv. and on Behalf of Those Similarly Situated, Plaintiffs-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 1—99—4173

Opinion filed March 13, 2001.

Lee J. Schwartz, A. Mark Ialongo, and James G. Meyer, all of Chicago, for appellants.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Julian N. Henriques, Jr., Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiffs, Roy L. Endsley III and Stephen Graham, individually and on behalf of those similarly situated, appeal the judgment of the circuit court of Cook County granting defendants' motion for summary judgment. The plaintiffs are seeking reversal of that judgment and request that the case be returned to the circuit court for trial. The issues presented for review are: (1) whether the trial court erred in concluding that the City of Chicago's (the City) practice of financing nonrelated projects with Skyway Toll Bridge System (Skyway) tolls did not violate Illinois common law; (2) whether the trial court erred in concluding the City's practice of financing nonrelated projects with Skyway tolls did not violate article IX, section 2, of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2) (the uniformity clause); (3) whether the trial court erred in concluding that voluntary choice exempts the City's practice of financing nonrelated projects with Skyway tolls from the requirements of the uniformity clause; (4) whether the trial court erred in concluding that there was no violation of state statutes because the financing was under the City's home rule powers; (5) whether the trial court erred in concluding that the challenged part of the tolls was not an unauthorized service tax; (6) whether the trial court erred in concluding there was no violation of the federal or state due process clause (U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2); (7) whether the trial court erred in concluding that this suit was precluded by *laches*; (8) whether the trial court erred in granting summary judgment on the issue of service fees; and (9) whether the trial court erred in granting summary judgment on plaintiffs' takings clause argument.

We affirm.

## BACKGROUND

Plaintiffs are two Skyway users; Endsley is a resident of Indiana and Graham is a resident of Cook County, Illinois. The Skyway is a 7.8-mile toll bridge carrying interstate route 90 (I-90), which connects the Indiana Toll Road at the Illinois state line and the Dan Ryan Expressway, in Chicago. It was opened in 1958. The cost of construction of the Skyway was paid by private funds raised by the sale of bonds authorized by Illinois statutes. See 605 ILCS 5/10—703, 10—706 (West 1998). The statutes authorize the collection of tolls from Skyway users to repay the original bonds and to pay the cost of operation of the Skyway. Skyway tolls are the primary security for repayment of the bonds.

In 1996, the City sold new bonds. The proceeds of the 1996 bond sale were $179,765,000, sufficient to "advance refund" the aggregate principal amount of the Skyway bonds that were then outstanding and to raise an additional $52 million for other "City transportation improvements."

Plaintiffs filed their original complaint in February 1998. Plaintiffs joined American National Bank and Trust Company as a defendant in its capacity as trustee of the Skyway bonds. The complaint raised issues under federal and Illinois law. The federal claims were based on the takings clause of the fifth amendment to the United States Constitution and the due process and equal protection clauses of the fourteenth amendment (U.S. Const., amends. V, XIV). The state law claims were based on the common law, certain statutes pertaining to toll bridges, and provisions of the Illinois Constitution, including its uniformity, takings, due process, and equal protection clauses (Ill. Const. 1970, art. IX, § 2, art. I, §§ 2, 15). The City and its treasurer moved to dismiss the complaint. The motion to dismiss was denied. In August 1998, plaintiffs moved for class certification.

In December 1998, the City moved for summary judgment on all of plaintiffs' claims. In February 1999, plaintiffs filed a motion in circuit court requesting a continuance of all matters pending in that court, including the City's motion for summary judgment. The circuit court granted a series of continuances. In June 1999, the federal district court dismissed all of the plaintiffs' federal claims with prejudice and declined to exercise jurisdiction over any of their state law claims. See *Endsley v. City of Chicago*, 230 F.3d 276 (7th Cir. 2000).

In November 1999, the circuit court granted summary judgment in favor of the City. The circuit court did not rule on the motion for class certification.

## ANALYSIS

### Standard of Review

■ The plaintiffs in the instant case are seeking reversal of the trial court's grant of defendants' motion for summary judgment. Summary judgment is appropriate when the pleadings and discovery, construed in the nonmovant's favor, show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Town Crier, Inc. v. Department of Revenue*, 315 Ill. App. 3d 286, 290, 733 N.E.2d 780 (2000). A circuit court's grant of summary judgment is subject to *de novo* review. *Town Crier*, 315 Ill. App. 3d at 290.

### I

Plaintiffs contend that Illinois common law requires Skyway toll

revenue use be limited to the public interest sought to be served, which is to defray the expense of providing the Skyway, not to provide payment for unrelated transportation projects. Defendants contend that the Skyway is not subject to the common law duty to limit its toll revenue to the amount of its reasonable operating costs because the Skyway is not the type of enterprise to which the common law duty has been applied. Defendants further contend that the tolls are authorized by home rule authority and state statute.

■ It is undisputed that the City of Chicago is a home rule municipality. *City of Chicago v. Roman*, 292 Ill. App. 3d 546, 550, 685 N.E.2d 967 (1997). The powers of home rule municipalities, those municipalities with a population greater than 25,000, are derived from article VII, section 6(a), of the Illinois Constitution of 1970. Ill. Const. 1970, article VII, § 6(a). Section 6(a) provides, in relevant part:

"[A] home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a).

■ Where the legislature has not been specific, courts will not find preemption of home rule authority. *Roman*, 292 Ill. App. 3d at 551. The "[p]owers and functions of home rule units shall be construed liberally" (Ill. Const. 1970, art. VII, § 6(m)), but their home rule powers are not absolute. The General Assembly can restrict the concurrent exercise of a home rule unit's power by enacting a law that specifically limits such power. See *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 187-88, 606 N.E.2d 1154 (1992).

■ Section 10—703 of the Illinois Highway Code provides, in pertinent part: "[E]ach municipality has the power to provide for the payment of the cost of acquiring or constructing any bridge or for the payment of any portion of the cost by one or more issues of revenue bonds of the municipality, payable solely from the net revenue of the bridge so acquired or constructed." 605 ILCS 5/10—703 (West 1998). Section 10—705 states, in pertinent part: "The municipality shall fix rates of toll to be charged for transit over and use of such a bridge. These rates shall be so fixed, charged, and adjusted as to provide revenue at all times sufficient, (1) to pay the reasonable cost of maintaining (including insurance), operating, and repairing the bridge ***." 605 ILCS 5/10—705 (West 1998). Section 10—706 of the Illinois Highway Code provides, in pertinent part: "Any municipality may by ordinance authorize the issue of refunding revenue bonds, payable solely from the revenues of a bridge to refund the principal or accrued interest, or both, of its outstanding revenue bonds issued hereunder ***." 605 ILCS 5/10—706 (West 1998).

■ Plaintiffs rely on *Village of Niles v. City of Chicago*, 82 Ill. App. 3d 60, 401 N.E.2d 1235 (1980), to support their contention that "the 1996 finance scheme violates Illinois common law," even though the reasoning of that case fails to support their claim. In *Niles*, the issue before the appellate court was whether the complaint failed to state a cause of action as to the reasonableness and discriminatory nature of the city's metered water rates. *Niles*, 82 Ill. App. 3d at 62. The court noted that "[a]lthough municipally owned utility systems are self-regulating, their rates are subject to review by the courts." *Niles*, 82 Ill. App. 3d at 68. The court explained that, "at common law, the standard of reasonableness has always been applied in evaluating the utility rates charged by municipal corporations acting in their proprietary capacities," and that the business of supplying water belongs to that class of enterprises upon which the public interest is impressed. *Niles*, 82 Ill. App. 3d at 67-68. Therefore, the city was subject to the same rules that apply to a privately owned utility, including those forbidding unreasonableness and discrimination in utility rates. *Niles*, 82 Ill. App. 3d at 68. Further, the court held that the city was not prohibited from realizing a reasonable revenue surplus or profit from the operation of the system. *Niles*, 82 Ill. App. 3d at 68. The court reemphasized that the rule prohibiting unreasonable discrimination does not require absolute uniformity of rates or forbid all discrimination; it only forbids discrimination that is arbitrary and without a reasonable factual justification. *Niles*, 82 Ill. App. 3d at 68.

Plaintiffs also rely on *Bobrowicz v. City of Chicago*, 168 Ill. App. 3d 227, 522 N.E.2d 663 (1988). In *Bobrowicz*, the appellate court reviewed the trial court's grant of summary judgment in favor of the plaintiff and all members of the class in their action challenging the surcharge on the sale of water to private entities and individuals residing in unincorporated areas of the Metropolitan Sanitary District. *Bobrowicz*, 168 Ill. App. 3d at 228. The court noted that, at common law, an enterprise with a monopoly on the service provided in the area, such as owning and operating a water system for the purpose of selling water to consumers, was prohibited from charging exorbitant rates and was required to serve all of its consumers without unreasonable discrimination in rates or manner of service. *Bobrowicz*, 168 Ill. App. 3d at 234. The appellate court held that the city had violated its common law duty to charge reasonable and nondiscriminatory rates by requiring purchasing municipalities to pay the city a 50% surcharge on any sale to nonresident consumers. *Bobrowicz*, 168 Ill. App. 3d at 236. The court clarified that when a municipal corporation owns and operates a water system for the purpose of selling water to consumers, it is acting in a business capacity and is generally to be treated as if it

were a private utility company. *Bobrowicz*, 168 Ill. App. 3d at 234. In the instant case, the City is not operating a private-like utility system for which it must charge reasonable and nondiscriminatory rates.

Plaintiffs also rely on *Ross v. City of Geneva*, 43 Ill. App. 3d 976, 357 N.E.2d 829 (1976). In *Ross*, the issue before the appellate court was whether a municipally owned utility had the authority to charge its commercial electric customers a fee, based on their electrical consumption, to be used solely for city parking facilities. *Ross*, 43 Ill. App. 3d at 979. The court analyzed the relevant statutes and held that there was no statutory authority to charge fees for the creation of a parking fund unrelated to the cost of the products supplied or the services rendered. *Ross*, 43 Ill. App. 3d at 980. The court explained that the parking fund in that case was an unrelated, isolated fund created with no statutory authority. *Ross*, 43 Ill. App. 3d at 980-81. Importantly, in that case, the charges could not have been avoided by the voluntary action of the plaintiffs or other class members. *Ross*, 43 Ill. App. 3d at 984. Additionally, the fund was wholly unrelated to customers' electrical consumption.

Defendants rely on *Broeckl v. Chicago Park District*, 131 Ill. 2d 79, 544 N.E.2d 792 (1989). In *Broeckl*, the issue before the court involved the validity of mooring fees imposed by the Chicago Park District that exceed operation and maintenance costs of recreational boating harbors. *Broeckl*, 131 Ill. 2d at 81. The court found it critical that "[i]f the legislature had intended that the fees charged for moorings were to be limited to actual costs, the legislature would not have explicitly stated that nonresidents could be charged higher fees." *Broeckl*, 131 Ill. 2d at 83. The court also reasoned that the 25% surcharge on nonresidents of the park district survived scrutiny under both federal and Illinois equal protection clauses. *Broeckl*, 131 Ill. 2d at 89. Therefore, the park district's practice of charging mooring fees in excess of expenses and costs actually incurred was permissible. *Broeckl*, 131 Ill. 2d at 90.

■ At common law, the standard of reasonableness has always been applied in evaluating the utility rates charged by municipal corporations acting in their proprietary capacities. *Niles*, 82 Ill. App. 3d at 67. However, in the instant case, the City does not have a monopoly on a utility service. The Skyway is a convenient and more expedient way of travel for those who choose to use it on their travels. Moreover, the statutes at issue here do not preclude the City from using its surplus revenues to repair the streets other than the highway. The common law duty to charge reasonable rates does not apply to the Skyway system in the instant case. If it did, we nonetheless hold that the Skyway does not unreasonably discriminate in rates or in manner of service.

It is our view that none of these statutes conflict with the City's home rule authority or its power to apply the surplus funds to road maintenance beyond Skyway repairs. The statutes do not specifically limit the power of the City from using the surplus revenue for purposes other than the Skyway. We, therefore, hold that the City was acting within its home rule unit power when it used revenue from the 1996 bonds sale to fund non-Skyway improvements.

■ Plaintiffs also assert that the toll is an unconstitutional service tax upon occupations not authorized under section 6(e)(2) of the Illinois Constitution. Section 6(e)(2) provides:

> "A home rule unit shall have only the power that the General Assembly may provide by law *** (2) to license for revenue or impose taxes upon or measured by income or earnings or upon occupations." Ill. Const. 1970, art. VII, § 6(e)(2).

The actions of the City are not taxes upon occupations and, therefore, we find plaintiffs' argument without merit.

## II

Plaintiffs' next contention is that the City violated the uniformity clause of the Illinois Constitution because there is little difference between those who pay the Skyway tolls and those who do not pay. Plaintiffs also contend that the trial court erred in concluding that "voluntary choice" exempted the 1996 bond scheme from the constitutional requirements of the uniformity clause. Defendants respond that the tolls are not subject to the uniformity clause because they are not taxes or fees and the City's use of a portion of the Skyway's toll revenues to pay for non-Skyway street improvements does not violate the uniformity clause of the Illinois Constitution. For the following reasons, we hold that the City's actions did not violate the uniformity clause.

■ The uniformity clause of the Illinois Constitution provides:

> "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." Ill. Const. 1970, art. IX, § 2.

The uniformity clause imposes more narrow limitations on the legislature's authority to classify the subjects and objects of taxation than the equal protection clause. *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 247, 606 N.E.2d 1212 (1992). To survive scrutiny under the uniformity clause, a nonproperty tax classification must: (1) be based on a real and substantial difference between the people taxed and those not taxed; and (2) bear some reasonable relationship to the object of the legislation or to public policy.

*Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 250, 665 N.E.2d 1246 (1996); *Northwestern University v. City of Evanston*, 221 Ill. App. 3d 893, 896, 582 N.E.2d 1251 (1991); *Searle Pharmaceuticals, Inc. v. Department of Revenue*, 117 Ill. 2d 454, 468, 512 N.E.2d 1240 (1987). If a tax is constitutional under the uniformity clause, it also passes under the equal protection clause. *Geja*, 153 Ill. 2d at 247. Under principles of equal protection, a classification is invalid if it is arbitrary and without a reasonable basis. *Searle*, 117 Ill. 2d at 468.

■ In the instant case, it is our view that the uniformity clause, which is a limitation on taxation, does not extend to tolls. "Taxes are an enforced proportional contribution levied by the State by virtue of its sovereignty for support of the government." *People ex rel. County of Du Page v. Smith*, 21 Ill. 2d 572, 583, 173 N.E.2d 485 (1961). Tolls are, on the other hand, contractual in nature, either express or implied, and are compensation for the use of another's property, and their amount is determined by the cost of the property or improvement and the consideration of the property or improvement and the consideration of the return that such expenditure should yield. *Smith*, 21 Ill. 2d at 583; *People ex rel. Curren v. Schommer*, 392 Ill. 17, 22, 63 N.E.2d 744 (1945).

Using the tollway is a voluntary choice made by road users. The route is not the exclusive route to and from Chicago. We hold that the distinction between who must pay the toll and who does not is not an arbitrary classification.

Plaintiffs rely on *Searle* to support their contention that the trial court erred in concluding that voluntary choice exempted the 1996 bond scheme from the constitutional requirements of the uniformity clause. In *Searle*, the issue before the court involved challenges to the constitutionality of the 1977 amendment of section 203(e)(2)(E) of the Illinois Income Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 2—203(e)(2)(E)). *Searle*, 117 Ill. 2d at 457. The plaintiff's challenge in *Searle* was that the amendment to that section unreasonably, and impermissibly, discriminated against corporations that are members of an affiliated group that filed consolidated federal corporate income tax returns. *Searle*, 117 Ill. 2d at 464. Specifically, plaintiffs in *Searle* argued that there was no rational basis for allowing a corporation that is a member of an affiliated corporate group filing a separate federal income tax return the privilege of carrying bank net operating losses while denying that same privilege to a corporation that is a member of an affiliated corporate group filing a consolidated federal income tax return. *Searle*, 117 Ill. 2d at 464-65. The defendant Department of Revenue argued that the amendment was not unconstitutional since administra-

tive convenience and fiscal planning could be conceived to sustain the classification created by the provision. *Searle*, 117 Ill. 2d at 465. Based on the uniformity clause of the Illinois Constitution, the court held that the amendment violated article IX, section 2, of the Illinois Constitution. *Searle*, 117 Ill. 2d at 458. The court reasoned that there was no real and substantial difference between a corporation that elects to file a consolidated income tax return and a corporation that did not elect to file a consolidated return. *Searle*, 117 Ill. 2d at 469. Further, the court noted that the classification bore no reasonable relationship to the object of the legislation or to public policy. *Searle*, 117 Ill. 2d at 464. The court further noted that the Illinois act allowed the state taxpayer the advantage of deducting a net operating loss and carrying back or carrying forward the unused portion of the deduction only insofar as such items were, for federal income tax purposes, deducted from the gross income of the taxpayer to arrive at federal taxable income. *Searle*, 117 Ill. 2d at 469.

Plaintiffs further rely on *Boynton v. Kusper*, 112 Ill. 2d 356, 494 N.E.2d 135 (1986). In *Boynton*, plaintiffs attacked a statute that required clerks in counties with a population exceeding 1 million to pay $10 of the $25 fee collected for issuing a marriage license into the Domestic Violence Shelter and Service Fund. *Boynton*, 112 Ill. 2d at 359. The court held that the imposition of a tax on the issuance of a marriage license did not bear a reasonable relationship to the pubic interest sought to be protected by the act in question and the means adopted, the imposition of the tax on marriage licenses, was not a reasonable means of accomplishing the desired objective. *Boynton*, 112 Ill. 2d at 368. The court reasoned that the policy imposed a direct impediment to the exercise of the fundamental right to marry and, therefore, such policy was subjected to the heightened test of strict scrutiny. *Boynton*, 112 Ill. 2d at 369. *Boynton*, unlike the instant case, involved a fundamental right and, therefore, required the highest test of scrutiny.

Defendants rely on *Hammerman v. Illinois State Toll Highway Authority*, 148 Ill. App. 3d 259, 498 N.E.2d 795 (1986). In that case, the court held that state statute gave the Illinois State Toll Highway Authority the power "to levy and collect tolls for the construction, operation and maintenance of the tollway system" and that there was no violation of plaintiff's constitutional rights "particularly since tollway usage—and the attendant payment of tolls as compensation therefor—is a matter of personal choice." *Hammerman*, 148 Ill. App. 3d at 266.

## III

Plaintiffs have asserted that defendants' actions constituted an

unlawful taking. The trial court held that such argument was not briefed and was inapplicable to the instant case. We agree.

█ Plaintiffs, in their reply brief, aver that tollway use creates an unlawful adhesion contract. We disagree. An adhesion contract is generally a form agreement submitted to a party for acceptance without any opportunity to negotiate terms. *Larned v. First Chicago Corp.*, 264 Ill. App. 3d 697, 700, 636 N.E.2d 1004 (1994). Contracts of adhesion are generally lawful and "mere disparity of bargaining power is not sufficient grounds to vitiate contractual obligations." *Streams Sports Club, Ltd. v. Richmond*, 99 Ill. 2d 182, 191, 457 N.E.2d 1226 (1983). In the instant case, the use of the tollway does not create an adhesion contract. See *Larned*, 264 Ill. App. 3d at 700.

In plaintiffs' briefs, but not argued before this court during oral argument, they cursorily contend that the trial court erred in concluding that this action was barred by *laches*. In a footnote in defendants' appellate brief, defendants respond that they do not contend that *laches* is a complete defense to this action, in light of the possibility that some form of limited relief could be fashioned that would eliminate the prejudice caused by the plaintiffs' failure to file suit promptly after the announcement of the 1996 bond issue. Because we have held that the trial court did not err in granting summary judgment on other grounds, we consider it unnecessary to decide the issue regarding *laches* in this appeal.

## CONCLUSION

For the foregoing reasons, the trial court's grant of summary judgment in defendant's favor is affirmed.

Affirmed.

CAHILL, P.J., and McBRIDE, J., concur.