THOMAS E. BROECKL *et al.*, Indiv. and on behalf of those similarly situated, Plaintiffs-Appellants and Cross-Appellees, v. THE CHICAGO PARK DISTRICT, Defendant-Appellee and Cross-Appellant.

First District (3rd Division)   Nos. 85—2995, 85—3062 cons.

Opinion filed May 18, 1988.—Rehearing denied June 30, 1988.

Craig E. Anderson, Lowell H. Jacobson, Allen D. Choka, and Herbert I. Rothbart, all of Chicago, for appellants.

George F. Galland, Jr., of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

These consolidated appeals are from a declaratory judgment class action suit in which plaintiffs allege that defendant, Chicago Park District, illegally levied and collected mooring fees in excess of the expenses and costs incurred in connection with related mooring activities. Plaintiffs also allege that the statute which permits defendant to charge higher fees to nonresidents of Chicago is unconstitutional and that it is an unconstitutional practice for defendant to charge higher mooring fees for nonresidents of Chicago. Both plaintiffs and defendant filed motions for summary judgment, which were granted in part and denied in part. We conclude that the trial court properly entered a summary judgment allowing defendant to levy and collect mooring fees in excess of the expenses and costs incurred in connection with related mooring activities. We also conclude that the trial court erred in entering a summary judgment which provided that the statute which permits defendant to charge a higher fee to nonresidents of Chicago is unconstitutional and void. In addition, we conclude that the trial court erred in entering a summary judgment which provides that it is an unconstitutional practice for defendant to add a 25% surcharge on mooring fees to nonresidents of Chicago. We therefore reverse and remand.

The facts that are essential to resolve the issues in this case are neither complex nor disputed. Defendant concedes that the mooring fees it charges exceed its costs and expenses for operating and maintaining its recreational boating harbors. Defendant makes a 100% to 500% profit on the fees. Also, nonresidents of Chicago are charged a 25% higher fee than residents of Chicago for the same facilities and services.

Plaintiffs first argue that in setting fees for the rental of its harbor moorings, defendant is required by law to limit the fees to an amount approximating the cost of furnishing and maintaining the moorings. The trial court rejected plaintiffs' argument, and we agree with the trial court.

■ We believe that the pertinent statutory scheme that is involved here must be examined to determine the extent to which defendant may impose mooring fees. The creation, maintenance, operation and improvement of the Chicago Park District is pursuant to a legislative enactment entitled "An Act in relation to the creation *** of the Chicago Park District" (Ill. Rev. Stat. 1987, ch. 105, par. 333.1 et seq.). The rental of harbor moorings is authorized and regulated by sections 26.1 through 26.10 of the statute. (Ill. Rev. Stat. 1987, ch. 105, pars. 333.23l through 333.23u.) Section 26.7 requires the Chicago Park Dis-

trict to pass an ordinance in order to issue revenue bonds to acquire, construct, enlarge, improve, operate and maintain its harbors. (Ill. Rev. Stat. 1987, ch. 105, par. 333.23r.) Subsection (1) of section 26.7 provides that the ordinance may include "covenants as may be deemed necessary or desirable to assure a successful and profitable operation of the harbor and facilities, and prompt payment of the principal of and interest upon the bonds." (Ill. Rev. Stat. 1987, ch. 105, par. 333.23r(*l*).) It follows that the legislature intended that the Chicago Park District should conduct a profitable operation of its harbors. Since mooring fees are the Chicago Park District's main source of revenue from the harbors, if a profitable operation of the harbors is to be accomplished, it can only be accomplished through profits derived from mooring fees.

Moreover, section 26.8 of the statute provides that the Chicago Park District may receive revenues from the operation of its harbors in excess of the requirements for retirement of revenue bonds or for payment of maintenance, operation, depreciation, rehabilitation and expansion of its harbors. (Ill. Rev. Stat. 1987, ch. 105, par. 333.23s.) Section 26.8 also provides that after all such bonds have been paid, such revenues may be transferred to the general corporate fund of the Chicago Park District and used for the maintenance, operation, repair and development of the harbors or "for any corporate purpose." (Ill. Rev. Stat. 1987, ch. 105, par. 333.23s.) Plainly, this statutory provision demonstrates that the legislature contemplated that defendant would operate its harbors at a profit to be used for any corporate purpose, rather than being restricted to merely an operation to satisfy the cost and maintenance of the harbors.

In addition, in section 26.3(g) of the statute, the legislature permits defendant to charge higher fees for all of its facilities and services to nonresidents of Chicago. (Ill. Rev. Stat. 1987, ch. 105, par. 333.23n(g).) Since the cost of providing moorings to nonresidents is the same as the cost for providing moorings for residents of Chicago, this statutory provision reflects a legislative intention not to tie the fees charged for moorings to defendant's costs and expenses for furnishing and maintaining the moorings.

■ We therefore believe that the statutory scheme that is involved in this case clearly demonstrates that the legislature intended that defendant operate its recreational harbors at a profit, rather than being limited to operating its recreational harbors solely to satisfy the cost of furnishing and maintaining the harbors. The cases plaintiffs rely on have held that licenses granted under a municipality's police power must be limited to such a charge for a license as will bear some

reasonable relation to the additional burdens imposed upon the municipality by the business or occupation licensed and the necessary expense involved in police supervision. These cases are inapposite because they involve licensing under a municipality's police power. A mooring rental is not in the nature of an exercise of a police power. The amount to be charged for mooring rentals is in the nature of a rental of public space and is therefore left to the discretion of the Chicago Park District commissioners. It is not the province of this court to control the exercise of that discretion or to determine what amount of profit is permissible or excessive for mooring fees.

Although there was no specific statutory authorization for the Chicago Park District to charge mooring fees at the time the case was decided, *MacNeil v. Chicago Park District* (1948), 401 Ill. 556, is apposite. In *MacNeil,* a boat owner contended that mooring fees charged by the Chicago Park District were "unreasonable, arbitrarily excessive and bear no reasonable relation to the cost of regulation and to any special services rendered to boat owners." (401 Ill. at 559.) The court said that the boat owner's argument would be applicable to an ordinance passed under the police power, but mooring fees are not in the nature of an exercise of a police power. Rather, the court held that mooring fees are in the nature of a rental of public space and that the determination of the amount of a rental charge was within the discretion of the Chicago Park District commissioners. The *MacNeil* court stated:

> "In the case of *City of Springfield v. Interstate Independent Telephone and Telegraph Co.*[,] 279 Ill. 324, wherein this court held that a charge for the use of facilities for public space was in the nature of a rental, we further held that such an ordinance was not a police ordinance, but only established a charge in the nature of rental. The question of determination of the amount of a rental charge would seem to be discretionary, in the instant case, in the park commissioners. We have held that where the performance of official duty involves the exercise of the judgment or discretion of a municipal officer and where such officer has considered and determined what his course of action will be, and he has exercised his discretion, his action is not subject to review or control. (*Coughlin v. Chicago Park Dist*[rict,] 364 Ill. 90.) The case cited further held that when a statute vested discretion in a municipal body to determine any manner or thing, it is not the province of the court to control the exercise of that discretion." (401 Ill. at 565.)

We believe that the present case, like *MacNeil,* is distinguishable from

the cases relied upon by plaintiffs. This case does not involve the exercise of a police power. Plaintiffs' argument is therefore without merit.

We next address the question of whether it is an unconstitutional practice for defendant to charge higher mooring fees to nonresidents of Chicago. Section 26.3(g) provides that the Chicago Park District may "establish and collect fees for all facilities and services, and compensation for materials furnished. Fees charged nonresidents of such district need not be the same as fees charged to residents of the district." (Ill. Rev. Stat. 1987, ch. 105, par. 333.23n(g).) Pursuant to this authorization, defendant's mooring fees to nonresidents include a 25% surcharge over the fees charged to residents of Chicago. The trial court ruled that the pertinent statutory provision and the resulting surcharge are unconstitutional and void.

■ We shall first relate the statutory provision to the privileges and immunities clause of the United States Constitution. The privileges and immunities clause reads as follows: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." (U.S. Const., art. IV., §2.) In *Baldwin v. Montana Fish & Game Comm'n* (1977), 436 U.S. 371, 383-84, 56 L. Ed. 2d 354, 365, 98 S. Ct. 1852, 1860, the Court stated:

> "Some distinctions between residents and nonresidents merely reflect the fact that this is a Nation composed of individual States, and are permitted; other distinctions are prohibited because they hinder the formation, the purpose, or the development of a single Union of those States. Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally. Here we must decide into which category falls a distinction with respect to access to recreational big-game hunting."

The Court went on to hold that recreational hunting was not one of those interests protected by the privileges and immunities clause, and the Court upheld a Montana statutory elk-hunting provision charging out-of-State hunters 7½ times more than Montana hunters for hunting licenses.

We believe that the holding in *Baldwin* is indissoluble from the question of whether the privileges and immunities clause is applicable to mooring fees for recreational boating. Since the privileges and immunities clause is not applicable to licensing fees for recreational hunting, we conclude that it is plainly not applicable to mooring fees for recreational boating.

■ We shall next consider whether the nonresident 25% sur-

charge violates the equal protection clause of the fourteenth amendment. (U.S. Const., amend. XIV.) Here, we note that a differential in cost between residents and nonresidents is not in itself invidious or unconstitutional. Rather, the critical test is whether the differential in cost has a rational basis. (*Baldwin,* 436 U.S. at 390-91, 56 L. Ed. 2d at 369-70, 98 S. Ct. at 1863-64.) Moreover, where a local public entity has recreational resources which are finite, it has a justifiable interest in favoring the utilization of those resources by its residents over nonresidents. Plainly, harbor moorings are a finite and indeed scarce resource of the Chicago Park District.

Under the circumstances, we believe that the 25% surcharge for nonresidents to obtain moorings merely amounts to a rational basis by which defendant can favor its residents' use of available moorings over nonresidents' use of the moorings. In *Baldwin,* the Court held that higher-priced hunting licenses for nonresidents were "an economic means not unreasonably related to the preservation of a finite resource." (436 U.S. at 390, 56 L. Ed. 2d at 369, 98 S. Ct. at 1863-64.) In the present case, the higher-priced moorings for nonresidents is an economic means not unreasonably related to the preservation of a finite resource. Thus, the 25% surcharge for moorings by nonresidents has a rational basis and is not in violation of the equal protection clause of the fourteenth amendment.

■ We therefore conclude that the trial court erred in entering a summary judgment which provided that the statute which permits defendant to charge a higher fee to nonresidents of Chicago is unconstitutional and void. We also conclude that the trial court erred in entering a summary judgment which provides that it is an unconstitutional practice for defendant to add a 25% surcharge on mooring fees to nonresidents of Chicago.

Accordingly, the summary judgment allowing defendant to levy and collect mooring fees in excess of the expenses and costs incurred in connection with related mooring activities is affirmed. The summary judgment which provides that the statute which permits defendant to charge a higher fee to nonresidents of Chicago is unconstitutional and void is reversed. The summary judgment which provides that it is an unconstitutional practice for defendant to add a 25% surcharge on mooring fees to nonresidents of Chicago is also reversed. This case is remanded for the entry of appropriate orders and judgments.

Affirmed in part; reversed in part, and remanded.

WHITE, P.J., and McNAMARA, J., concur.